IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| FREDIE LAUREANO, ) | |
| ) | |
| PLAINTIFF, ) | |
| v. ) | |
| ) | Case No. |
| MIDLAND FUNDING, LLC and ) | |
| MIDLAND CREDIT MANAGEMENT, ) | |
| INC., ) | |
| ) | |
| DEFENDANTS. ) | JURY TRIAL DEMANDED |

## COMPLAINT

Plaintiff, Fredie Laureano, brings this action under the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq.* ("FDCPA"), for a finding that Defendants' debt collection actions violated the FDCPA, and to recover damages for Defendants' violations of the FDCPA, and alleges:

## JURISDICTION AND VENUE

1. This Court has jurisdiction pursuant to § 1692k(d) of the FDCPA, and 28 U.S.C. §§ 1331 and 1337.

2. Venue is proper in this District because parts of the acts and transactions occurred here, and the Defendants transact substantial business here.

## STANDING

3. Plaintiff has suffered an injury in fact that is traceable to Defendants' conduct and that is likely to be redressed by a favorable decision in this matter.

4. Specifically, Plaintiff suffered a concrete injury due to Defendants' false reporting of his credit information.

1

5.     Plaintiff has thus suffered an injury because of Defendants' conduct, giving rise to standing before this Court. *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1544 (2016), quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 580 (1992) (Congress has the power to define injuries and articulate chains of causation that will give rise to a case or controversy where none existed before.); *Bellwood v. Dwivedi*, 895 F. 2d 1521, 1526-27 (7th Cir. 1990) ("Congress can create new substantive rights, such as a right to be free from misrepresentations, and if that right is invaded the holder of the right can sue without running afoul of Article III, even if he incurs no other injury[.]").

## PARTIES

6.     Plaintiff, Fredie Laureano ("Mr. Laureano" or "Plaintiff") is a resident of the State of Illinois, from whom the Defendants attempted to collect a delinquent consumer debt originally owed to Citibank, N.A. Plaintiff is thus a consumer as that term is defined by 15 U.S.C. § 1692a(3) of the FDCPA.

7.     Defendant Midland Funding LLC ("Midland") is a Delaware limited liability company with its principal place of business at 3111 Camino Del Rio N, Suite 103, San Diego, CA 92108. It does or transacts business in Illinois.

8.     Midland operates a nationwide delinquent consumer debt collection business and attempts to collect debts from consumers in virtually every state, including consumers in the State of Illinois. In fact, Midland acted as a debt collector, as that term is defined in the FDCPA, as to the delinquent consumer debt when it attempted to collect the delinquent consumer debt from Plaintiff.

9. Midland is a debt scavenger that specializes in buying large portfolios of defaulted consumer debts for pennies on the dollar, the full amount of which it then tries to collect through other debt collectors.

10. Midland acts as a debt collector as defined by § 1692a(6) of the FDCPA because it uses the instrumentalities of interstate commerce including the telephone and/or the mails in its business, the principal purpose of which is the collection of defaulted consumer debts.

11. Defendant Midland Credit Management, Inc. ("MCM") is a Kansas corporation with its principal place of business at 3111 Camino Del Rio N, Suite 1300, San Diego, CA 92108-8875. MCM does or transacts business in Illinois.

12. MCM acts as a debt collector as defined by § 1692a(6) of the FDCPA because it uses the instrumentalities of interstate commerce including the telephone and/or the mails in its business, the principal purpose of which is the collection of defaulted consumer debts.

13. MCM also acts as a debt collector as defined by § 1692a(6) of the FDCPA as it regularly attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.

14. Midland regularly uses MCM to collect debts on its behalf from consumers.

15. Defendant MCM operates a nationwide delinquent debt collection business and attempts to collect debts from consumers in virtually every state, including consumers in the State of Illinois. In fact, MCM acted as a debt collector, as that term is defined in the FDCPA, as to the delinquent consumer debt when it attempted to collect the delinquent consumer debt from Plaintiff.

16. Defendant MCM is a collection agency, as that term is defined in the Illinois Collection Agency Act, 225 ILCS 425/1 et seq., and attempts to collect debts held in the name of Midland Funding, LLC.

17. Defendant MCM is registered as a collection agency with the Illinois Department of Financial & Professional Regulation.

**FACTUAL ALLEGATIONS**

18. According to the Defendants, Plaintiff incurred a debt for the purchase of goods or services used for personal, family, or household purposes, originally to Citibank, N.A. ("alleged debt"). The alleged debt is thus a debt as that term is defined by § 1692a(5) of the FDCPA.

19. Defendants claim that the alleged debt was charged off and sold, transferred or otherwise assigned to Midland after it had entered default.

20. Defendant MCM regularly attempts to collect alleged debts on behalf of Midland.

21. Defendant MCM began attempting to collect the alleged debt from Plaintiff and began reporting it on Plaintiff's credit report in August 2018.

22. Plaintiff subsequently reviewed his credit report and noticed that Defendants were reporting that he owed $5,394 on the alleged debt.

23. Plaintiff believed that this was inaccurate and that he did not owe that amount. Plaintiff thus instructed his attorneys to notify Midland that he disputed the debt and was represented by counsel.

24. On or about June 25, 2019, Plaintiff, through counsel, faxed a letter to Defendant Midland notifying it that Plaintiff disputed the alleged debt and that he was represented by counsel. (Exhibit A, June 25, 2019, Dispute Letter).

25. The letter constituted a dispute regarding the debt, and that dispute was communicated to Defendant.

26. Defendant Midland received the dispute letter shortly thereafter.

27. On or about June 25, 2019, Defendant Midland knew or should have known that Plaintiff disputed the accuracy of the debt.

28. On information and belief, Midland communicates credit information to the consumer reporting bureaus through MCM.

29. On or about August 9, 2019, Defendants communicated information regarding the alleged debt to the Equifax consumer reporting agency.

30. Defendants Midland and MCM communicated, *inter alia*, an account balance, an account number, and a date reported. (Exhibit B, Excerpt from Plaintiff's Equifax Report).

31. Even though Plaintiff notified Defendants that he disputed the alleged debt, Defendants failed to communicate that Plaintiff's alleged debt was disputed when they communicated other information to Equifax regarding the alleged debt on or about August 9, 2019.

32. Credit reporting by a debt collector constitutes an attempt to collect a debt. *See, e.g., Rivera v. Bank One*, 145 F.R.D. 614, 623 (D.P.R. 1993) (a creditor's report of a debt to a consumer reporting agency is a "powerful tool, designed in part to wrench compliance with payment terms from its cardholder").

33. The failure to mark a disputed debt as disputed will cause harm to a consumer and influence their actions regarding the debt. *Evans v. Portfolio Recovery Associates, LLC*, 889 F.3d 337, 349 (7th Cir. 2018). ("Put simply, the failure to inform a credit reporting agency that

the debtor disputed his or her debt will always have influence on the debtor, as this information will be used to determine the debtor's credit score.").

34. 15 U.S.C. § 1692e of the FDCPA provides in relevant part as follows:

> **False or misleading representations**
>
> **A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:**
>
> **. . . (8) Communicating or threatening to communicate to any person credit information which is known, or which should be known to be false, including the failure to communicate that a disputed debt is disputed. . . .**

35. On or before August 9, 2019, Defendants knew or should have known that Plaintiff had disputed the alleged debt because Defendants received the dispute and reviewed it.

36. Even though Defendants knew or should have known that Plaintiff disputed owing the alleged debt, Defendants communicated credit information about Plaintiff to the Equifax consumer reporting agency, while omitting the fact that Plaintiff disputed that alleged debt, in violation of 15 U.S.C. §§ 1692e and 1692e(8).

37. On or about August 23, 2019, Defendants communicated information regarding the alleged debt to the TransUnion consumer reporting agency.

38. Defendants Midland and MCM communicated, *inter alia*, an account balance, an account number, and a date reported. (Exhibit C, Excerpt from Plaintiff's TransUnion Report).

39. Defendants communicated a balance on the alleged debt of $5,472.

40. Defendants attempted to collect an additional $78 on the alleged debt over and above the amount it had reported was owed to the Equifax consumer reporting agency.

41. Defendants did not have any right to increase the balance of the alleged debt, as the debt had been charged off and interest and fees could not have continued to accrue.

42. 15 U.S.C. § 1692e of the FDCPA provides in relevant part as follows:

**False or misleading representations**

**A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:**

**. . . (2) The false representation of –**
**(A) The character, amount, or legal status of any debt. . . .**

**. . . (8) Communicating or threatening to communicate to any person credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed. . .**

**. . . (10) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer. . . .**

43. Defendants made false representations of the amount of the alleged debt, in violation of 15 U.S.C. §§ 1692e, 1692e(2), 1692e(8) and 1692e(10) when they communicated an inflated balance to the TransUnion consumer reporting agency.

44. 15 U.S.C. § 1692f of the FDCPA provides in relevant part as follows:

**Unfair practices**

**A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:**

**. . . (1) The collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law. . . .**

45. Defendants attempted to collect an amount not authorized by the agreement creating the debt or permitted by law, in violation of 15 U.S.C. §§ 1692f and 1692f(1) when they attempted to collect an additional $78 from Plaintiff when they had no legal right to do so.

7

46. Since Defendants could not legally charge interest or fees once the debt had been written off, there is no way the balance could have increased $78 between August 9, 2019 and August 23, 2019.

## COUNT I—FAIR DEBT COLLECTION PRACTICES ACT

47. Plaintiff re-alleges the previous paragraphs as if set forth fully in this count.

48. Defendants failed to communicate the fact of Plaintiff's dispute to the Equifax consumer reporting agency when communicating other information regarding the alleged debt, in violation of 15 U.S.C. §§ 1692e and 1692e(8).

49. Defendants made false representation of the amount of the alleged debt, in violation of 15 U.S.C. §§ 1692e, 1692e(2), 1692e(8) and 1692e(10) when they communicated an inflated balance to the TransUnion consumer reporting agency.

50. Defendants attempted to collect an amount not permitted by law, in violation of 15 U.S.C. §§ 1692f and 1692f(1) when they attempted to collect an additional $78 without any statutory or contractual authority to do so.

51. Because of the Defendants' violations of the FDCPA, Plaintiff is entitled to an award of actual damages, statutory damages, costs and reasonable attorney fees.

WHEREFORE, Plaintiff asks that the Court enter judgment in his favor and against Defendants as follows:

> A. Actual damages pursuant to 15 U.S.C. §1692k(a)(1);
>
> B. Statutory damages pursuant to 15 U.S.C. § 1692k(a)(2);
>
> C. Costs and reasonable attorney fees pursuant to 15 U.S.C. § 1692k(a)(3); and
>
> D. Such other or further relief as the Court deems proper.

**JURY DEMAND**

Plaintiff demands trial by jury.

Respectfully submitted,

By: __/s/ *Bryan Paul Thompson*__
One of Plaintiff's Attorneys

Bryan Paul Thompson
Robert W. Harrer
CHICAGO CONSUMER LAW CENTER, P.C.
111 West Washington Street, Suite 1360
Chicago, Illinois 60602
Tel. 312-858-3239
Fax 312-610-5646
bryan.thompson@cclc-law.com
rob.harrer@cclc-law.com

**DOCUMENT PRESERVATION DEMAND**

Plaintiff hereby demands that defendant take affirmative steps to preserve all recordings, data, documents, and all other tangible things that relate to plaintiff, the events described herein, any third party associated with any telephone call, campaign, account, sale or file associated with plaintiff, and any account or number or symbol relating to them.

These materials are likely very relevant to the litigation of this claim. If defendant is aware of any third party that has possession, custody, or control of any such materials, plaintiff demands that defendant request that such third party also take steps to preserve the materials. This demand shall not narrow the scope of any independent document preservation duties of the defendant.

By: s/ *Bryan Paul Thompson*
One of Plaintiff's Attorneys

**NOTICE OF LIEN AND ASSIGNMENT**

Please be advised that we claim a lien upon any recovery herein for 1/3 or such amount as a court awards. All rights relating to attorney's fees have been assigned to counsel.

By: /s/ *Bryan Paul Thompson*
One of Plaintiff's Attorneys

9